# Henry Springer's Appeal.

1. A testator devised a farm to his son Henry, subject to the following condition: "Further, I will that my two sons, Henry and Joseph, pay to my wife, delivered in the bushel, one third of all the grain they raise on the farms during her lifetime." Held (*a*) that the bequest to the wife is a charge upon the farm; (*b*) that therefore the Orphan's Court has jurisdiction to enforce the payment of her legacy.

2. An agreement obtained by the son from his mother, who was impaired in body and mind, by reason of age when it was executed, that she would take annually a small sum of money in lieu of her legacy, and that took from her a competence which was her sole reliance, and left her insufficient to supply the common necessaries of life, will not conclude her in a proceeding to enforce the payment of her legacy.

November 7th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Allegheny county:* Of October and November Term, 1885, No. 201.

Appeal of Henry Springer from the final decree of said court ordering, adjudging and decreeing that Henry Springer pay to Nancy Springer, the petitioner, $484, being the cash value of Nancy Springer's share of production for two years of farm, devised by will of decedent to Nancy Springer, less $50 credit and costs.

The following are the facts found by the court, HAWKINS, P. J.

This is a proceeding instituted on behalf of Mrs. Nancy Springer, widow, to enforce certain alleged charges on farms devised to Joseph Springer, Jr., Henry Springer, William A. Springer and John Springer. The respondents demurred, their demurrers were overruled, and thereupon answer filed, and a large amount of testimony was taken.

The *prima facie* case made by the evidence of petitioner;

the defence made by respondents; the rebutting evidence adduced by the petitioner, and the findings of fact by the court will be briefly stated:

Joseph Springer died in 1861, testate, seized of about 1,000 acres of land, and leaving to survive him a widow, Nancy Springer, the present petitioner, and children, viz.: John, Nancy Jane, afterward married to Donaldson, Henry, Joseph, George, Horace, an idiot, Ethaline Morrow, Mary A. Bailey, and William A. Springer, a minor.

By his will he made the following among other provisions:

1. To his son, John, he gave a farm containing 165 acres, excepting thereout the orchard field, containing about 5 acres, for the use of his widow during life; and

.2. To Henry, a farm containing about 175 acres; and

3. To Joseph, a farm containing about 130 acres, with this provision: "Further, I will that my two sons, Henry and Joseph, pay to my wife, delivered in the bushel, one third of all the grain they raise on their farms during her lifetime, also, one third the fruit," and the devise to Joseph was also made subject to the payment of $25 by him to his sister, Mrs. Bailey.

The foregoing constitute the only provisions made by testator for his widow; it is not claimed that she has had any other estate. The petitioner is now 80 years of age, feeble in body, and with mind impaired. She charges:·

That her son, John, in 1861, took and has since kept exclusive possession and appropriated to his own use the profits and yield of the orchard and orchard field, and that she estimates the value of said yield at $100 per annum.

That neither her sons Henry nor Joseph had delivered nor tendered her share of the grain and fruit according to the terms of the will, nor the equivalent ·thereof, although often .requested, and that she estimates the value of said shares at $250 each.

1. The claim against John Springer was practically abandoned as not being within·the jurisdiction of this court.

2. The evidence shows that Henry raised on an average on the farm devised to him—11 acres·of corn, yield per acre 100 bushels, worth per bushel 65 cts.; 11 acres of oats, yield per· acre 35 bushels, worth per bushel 50 cts.; 15 acres of· wheat, yield per acre 16 bushels, worth per bushel $1.05; making a total per annum of $1,159.50, one third of which, as due Mrs. Springer, would be $386.50.

The defences made by Henry to his mother's claim are that by various settlements prior to 1883 he had paid her, in full, in cash and grain, and that by written agreement made in 1883 was thereafter to receive from him the sum of $25 per

annum in lieu of the grain and fruit which the will had required should be given her.

The evidence shows that he paid his mother December 19th, 1871, $100 ; October 10th, 1874, $100 ; November 29th, 1875, $33 ; March 18th, 1882, $30 ; and April 18th, 1883, $50 ; total $313. These payments appear in certain receipts, which all purport to be "in fool" to date. There was also shown to have been delivered ten bushels of wheat in 1871. There does not appear to have been any fruit raised on the farm.

In support of the receipts Henry called his brothers John, Joseph, George and William, as witnesses to the fact of execution, or to the genuineness of the signatures. William and Joseph seemed to be very willing witnesses, and when they testified to the fact of execution, said that the receipts had been twice read to and then read by their mother. In some cases Joseph undertook to testify to signature, but it afterward turned out that he couldn't read writing.

Mrs. Springer denied some of the signatures, but her testimony was contradictory. She was very positive that she had never signed any receipt with the knowledge that it was in full.

There seems to be little reason to doubt that the signatures are genuine ; and although very unsatisfactory in respect of the later years, the weight of evidence seemed to establish the fact, that Mrs. Springer signed the receipts voluntarily and with knowledge of their contents as being in full.

The written agreement above referred to as having been made liquidating the cash value of the charge at $25 per annum was made on the 27th day of February, 1883. It was shown to have been read to her in an ordinary tone of voice. Mrs. Springer testifies that it is not in accordance with what she understood the agreement to be ; that she supposed she was signing an agreement for one year only, by which Henry was to pay her in cash $25 and a bill for necessaries which James Bigham had, for $50. Her story is corroborated by the fact that, in April following, on an attachment execution issued by James Bigham on which Henry was summoned as garnishee, he admitted that he owed his mother $50 and paid accordingly. There is no doubt that the agreement was made at the earnest solicitation of Henry. He made frequent visits to his mother previously with a view to get it. His health was poor and his crops had partially failed.

The value of Mrs. Springer's share of the grain raised
by Henry is, as above stated, per annum,     .     $267.33
And the value as per this agreement,     .     .     .     25.00

The weight of evidence establishes the fact that the agree-

ment as written was in the circumstances unconscionable, and was not understood by Mrs. Springer when executed.

The court accordingly entered the decree above recited, filing the following opinion :

1. As the will of Joseph Springer, deceased, imposed no duty on his son, John,. in respect of this petitioner, Nancy Springer, this court has no jurisdiction of the claim made against him. Her claim, if she has any, is one of contract.

2. Under the evidence, the interest which Mrs. Springer has in her son Joseph's farm is that of common law dower, and jurisdiction of that also belongs to another court: Bradfords v. Kent, 43 Pa. St., 474.

3. But the interest which she has in the farms of Henry and Wm. A. Springer, arises under the will of her deceased husband; is a charge upon them : Buchanan v. Duncan, 40 Pa. St., 82; and consequently within the jurisdiction of this court.

The principle upon which the decision on the merits of these claims should be rested, can be best stated in the language of Mr. Justice Story : 1 Eq. Jur. § 331. . . . . " The proper jurisdiction of courts of equity is to make every one act according to conscience, and not to suffer undue advantage to be taken of the strict forms of law, or of positive rule. Hence it is that even if there be no proof of fraud or imposition, yet if upon the whole circumstances, the contract appears to be grossly against conscience, or grossly unreasonable and oppressive, courts of equity will sometimes interfere and grant relief, although they certainly are very cautious of interfering, unless upon strong circumstances. But the mere fact that the bargain is a very hard or unreasonable one, is not generally sufficient, per se, to induce these courts to interfere, and indeed it will be found that there are very few cases, not infected with positive or actual fraud in which they do interfere except where the parties stand in some very peculiar predicament, and in some sort under the protection of the law from age, or character, or relationship."

If this principle be applied here, the agreements relied on here by Henry and Wm. A. Springer must be disregarded. Upon the whole circumstances they are grossly against conscience. The petitioner against whom they were pleaded, was impaired in body and mind by reason of age when they were executed; they took away from her a competence which was her sole reliance ; and left her insufficient to supply common necessaries of life. Her relationship to these respondents imposed upon them a legal as well as a natural duty to maintain her in comfort; and public policy will not permit that they shift their burden upon the poor rates.

Mrs. Springer therefore stands in a " very peculiar predicament and in some sort under the protection of the law from age," as well as from " relationship " to these respondents, and is entitled to relief.

Henry Springer took this appeal assigning for error *inter alia* the decree of the court above set out.

*George H. Quaill*, for appellant.—The Orphans' Court had no jurisdiction of the matters and things complained of in said petition. This court has no jurisdiction to enforce the payment of a legacy unless it is made by the terms of the will a charge on the land ; and in such case its jurisdiction is exclusive : Downer *v.* Downer, 9 Watts, 60 ; Craven *v.* Bleakney, 9 Watts, 19 ; Strickler *v.* Sheaffer, 5 Barr, 240 ; Reed *v.* Reed, 5 Barr, 241 ; Gibson's Appeal, 25 Pa. St., 191 ; Breden *v.* Gilliland, 67 Id., 34 ; Pierce *v.* Livingston, 80 Id., 99. The provision made for petitioner in the will, and as set forth in the petition, was not made either by the express terms of the will, or by implication, a charge upon the farm devised to appellant. It was a mere direction to pay, which this court has repeatedly held is not sufficient to· charge land : Brandt's Appeal, 8 Watts, 198 ; Montgomery *v.* McElroy, 3 W. & S., 370 ; Hackadorn's Appeal, 1 Jones, 86 ; Wright's Appeal, 2 Jones, 256 ; Hamilton *v.* Porter, 63 Pa. St., 332 ; Buchanan's Appeal, 72 Id., 448 ; Cable's Appeal, 91 Id., 327 ; Walter's Appeal, 95 Id., 305 ; Haworth's Appeal, 105 Id., 362.

The petition joined four respondents who were not jointly liable.

The court was also in error in setting aside, annulling, cancelling, and disregarding the article of agreement set up by the appellant in his answer, as a bar to the petitioner's right to recover against him in the proceeding in the court below, dated February 27th, 1883. A court of equity should not set aside or rescind a contract except on the ground of mutual mistake or misrepresentation and fraud, and not then unless the evidence of these be so clear as to leave no room for hesitation or doubt in the mind of the court; and that even mental weakness, not amounting to inability to comprehend the contract, when unaccompanied by evidence of imposition or undue influence furnishes no ground for equitable interference in setting aside an executed contract : Stine *v.* Sherk, 1 W. & S., 195 ; Irwin *v.* Shoemaker, 8 W. & S., 75 ; Davidson *v.* Little, 10 Harris, 245 ; Graham *v.* Pancoast, 6 Casey, 97 ; Nace *v.* Boyer, 6 Casey, 99 ; Aiman *v.* Stout, 42 Pa. St., 114 ; Gedde's Appeal, 80 Id., 442 ; Cummins *v.* Hurlbutt, 92 Id., 165 ; Bierer's Appeal, 92 Id., 265 ; Richard's Appeal, 39 Leg. Int., 402 ; Lynch's Appeal, 10 W. N. C., 366 ; Kelly's Appeal, 32

Pitts. L. J. 323; Phillips v. Meily, 10 Out., 536. Neither inadequacy of consideration, hardship, or mental weakness not amounting to inability to comprehend the contract, when unaccompanied by evidence of imposition or undue influence, furnishes any ground for equitable interference in setting aside an executed contract: Graham v. Pancoast, 6 Casey, 97; Nace v. Boyer, 6 Casey, 99; Aiman v. Stout, 42 Pa. St., 114; Kelley's Appeal, 32 Pitts. Leg. J., 323. The uncorroborated testimony of one witness, which is contradicted by the oath of the opposite party, is not sufficient to set aside or alter a written contract: Nulton's Appeal, 13 W. N. C., 430; Ott v. Oyer, 10 Out., 6; Phillips v. Meily, 10 Out., 536; Oppenheimer v. Wright, 10 Out., 569. " A man who is *sui juris* and *compos mentis* may give away all his personal property so as to become himself, and leave his wife and children penniless:" Pringle v. Pringle, 59 Pa. St, 281; Bouslough v. Bouslough, 68 Pa. St., 495. But the Act of Assembly under which this proceeding is begun, very plainly makes the land alone liable for the legacy; the proceeding itself is clearly *in rem;* and the proper writ for the enforcement of the decree is a *levari facias.* Act of February 24th, 1834, § 39; Hart v. Homiller, 23 Pa. St., 39.

*Erskine* (with whom was *Miller*) for appellee.—1. The words "subject to the conditions hereafter mentioned" are express in their terms and constitute the legacy to the widow, an express charge upon the land of Henry Springer, and gives the Orphans' Court exclusive jurisdiction. The words and terms used are identical with those in Mellon's Appeal, 46 Pa. St., 174; McFait's Appeal, 8 Barr, 292; Jenkins v. Jenkins, 7 Barr, 246; Pierce v. Livingston, 80 Pa. St., 99. And the Orphans' Court has a right in a proceeding of this kind as a court of equitable jurisdiction to ascertain, make and fix the valuation of her legacy: Steele's Appeal, 47 Pa. St., 437; Gibson's Appeal, 25 Pa. St., 193.

2. The court was justified in setting aside the contract. The law presumes from the relation of mother and son that the latter had influence over the former. Express proof of influence need not be made; it is implied from the relation: Whelan v. Whelan, 3 Cowen, 537, Story's Eq., § 312. The facts were all fairly submitted to the court, and the findings of the court are as binding as if they had been found in the same way by a jury: Gibson's Appeal, 25 Pa. St., 193. The general principle is, "If a confidence is reposed, and that confidence is abused, courts of equity will grant relief. If confidence is reposed it must be faithfully acted upon, the utmost good faith, *uberrima fides* is required: Comstock v.

Comstock, 57 Barb., 454; Story's Eq. Jur., Vol. 1, §§ 307 and 308; Bispham's Eq., §§ 232 and 235; Martin *v.* Martin, 1 Heiskell, 654; Harvey *v.* Mount, 8 Beavan, 439; Kennedy *v.* Kennedy, 2 Ala., 571; Sears *v.* Shafer, 2 Selden, 272; Todd *v.* Grove, 33 Md., 188; Darlington's Appeal, 86 Pa. St., 518; Story's Eq. Jur., § 312; Highberger *v.* Stiffler, 21 Md., 352.

3. The appellant complains that the court erred in "making the decree against the respondent generally instead of *de terris.*" We contend that the court made a proper decree in this case. The amount found to be due to the widow is under the circumstances of the case a personal liability as well as a lien on the land: Hoover *v.* Hoover, 5 Barr, 355; Lobach's case, 6 Watts, 167. But if in the opinion of this court, the court below should have indicated the nature of the writ or limited the operation of the decree to the land, the decree is properly amendable in this court, and can be amended *nunc pro tunc*, or a new decree made by this court. This court can reform the decree of the court below and declare how it should be executed, as it did in the case of Hart *v.* Homiler Exr's., 23 Pa. St., 43.

Mr. Justice STERRETT delivered the opinion of the court, January 4th, 1886.

There appears to be nothing in either of the specifications of error that requires special notice. All the questions necessarily involved in the case are clearly stated and correctly disposed of in the opinion of the learned president of the Orphans' Court.

The devise to appellant is in the following words: "To my son Henry Springer I bequeath the farm on which he now lives, known as the Beer farm, subject to the conditions hereinafter mentioned." One of these conditions is contained in the following clause of the will: "Farther, I will that my two sons Henry and Joseph pay to my wife, delivered in the bushel, one third of all the grain they raise on their farms during her lifetime; also one third of the fruit." This bequest is a charge on the farm devised to appellant, to the extent that the latter is required to contribute, in kind, to the payment thereof. The land itself is evidently the source whence that portion of the provision, made by testator for the benefit of his widow, was intended to come, and hence it is a charge thereon, notwithstanding appellant by accepting the devise may have made himself personally liable to perform the condition subject to which the land was devised. Compliance with that provision having been unjustly refused, it was the duty of the court to ascertain the value of the grain and fruit that should have been contributed by appellant's

farm, and by its decree enforce payment thereof. Under the authorities applicable to the facts established by the evidence, the Orphans' Court undoubtedly had jurisdiction of the case.

There was no error in holding that appellee was not concluded by the alleged agreement to accept, as an equivalent for the produce she was entitled to receive under the will, the paltry sum of $25 per annum,—less than one twelfth of its actual value as found by the court. The testimony on that subject discloses a case of gross misconduct on the part of appellant, in attempting to overreach his mother by taking advantage of her weak and helpless condition, such as no court of equity can sanction or encourage. The facts found by the learned judge were clearly warranted by the evidence and the conclusions drawn therefrom are correct.

It does not appear that appellant was in any manner prejudiced by the joinder of other parties in the original petition, and hence he has no just ground of complaint as to that. Moreover, proceedings in equity are not governed by the strict rules applicable to actions at law, especially as to those who may be made parties thereto.

We find nothing in the record of which appellant has any just reason to complain. For reasons above suggested, and others more fully presented in the opinion of the court below, the decree should be affirmed.

Decree affirmed and appeal dismissed at the costs of appellant.